UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ADVANCED MAGNETIC CLOSURES, INC.,                :
              Plaintiff,                               :   98 Civ. 7766 (PAC)
                                                       :
   - against -                             :   OPINION
                                                       :   AND ORDER
ROME FASTENER CORP., ROME FASTENER         :
SALES CORP., ROMAG FASTENERS, INC.,              :
RINGS WIRE, INC.                                 :
              Defendants.                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ROMAG FASTENERS, INC.,                           :
              Counter Claimant,                        :
                                                       :
   - against -                             :
                                                       :
ADVANCED MAGNETIC CLOSURES, INC.,                :
              Counter Defendant.                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Advanced Magnetic Closures, Inc. ("AMC") brings this action for patent infringement, false advertising, false marking, and common law unfair competition against Defendants Rome Fastener Corporation, Rome Fastener Sales Corporation, Romag Fasteners Inc. and Rings Wire, Inc. (collectively "Romag"). AMC alleges that magnetic fasteners produced by Romag infringe on its U.S. Patent No. 5,572,773 (the "'773 patent"). Romag in turn brings two counterclaims against AMC: (1) for a declaratory judgment that the '773 patent is invalid or not infringed by Romag and (2) for unfair competition pursuant to the Lanham Trademark Act, 15 U.S.C. § 1125(a). The parties cross-moved for summary judgment: AMC to strike Romag's fifth, eight, ninth and tenth affirmative defenses and first counterclaim to the extent they were based on AMC's lack of inventorship, lack of standing, unclean hands, and patent misuse; and

Romag to dismiss AMC's claim for patent infringement on the basis of prior inventorship or non-infringement. Oral argument was heard on October 30, 2006. On November 16, 2006, the Court granted AMC's motion in part and dismissed Romag's affirmative defense and counterclaim of patent misuse, and its defense and counterclaim of unclean hands to the extent they were based on conduct unrelated to the '773 patent. The Court reserved decision on Romag's motion and on AMC's motion as to inventorship, standing, and unclean hands related to the '773 patent and ordered a brief reopening of discovery related to those issues.

Having reviewed the supplemental submissions of the parties, the Court grants AMC's motion for summary judgment as to lack of standing and denies it as to lack of inventorship and unclean hands, and denies Romag's motion in its entirety.

## RELEVANT FACTS[1]

The issues before the Court are rooted in disputes over the invention of the '773 patent and a similar patent held by Romag, U.S. Patent No. 5,722,126 (the "'126 patent"). Each patent claims a magnetic fastener with a central hole, but the '773 patent claims a central hole that increases the magnetic attraction of the fastener, while the '126 patent claims a central hole that decreases the magnetic attraction. The named inventor of the '773 patent is Irving Bauer ("Bauer"),[2] AMC's President and sole owner. The named inventor of the '126 patent is Howard Reiter ("Reiter"), President of Defendant Romag Fasteners, Inc. and Vice President of the other Romag Defendants.

Romag contends that the true inventor of the '773 patent is not Bauer but Robert Riceman ("Riceman"), and that the naming of Bauer was a deliberate fraud on the

---

[1] These facts are derived from the Complaint and the parties' Local Rule 56.1 Statements and supporting evidence. Sources will be cited only when quoted. Facts are undisputed unless otherwise indicated.
[2] Bauer is also known as Gabriel Bauer.

2

Patent and Trademark Office ("PTO"). Romag also contends that Reiter invented Romag's product prior to the invention covered by the '773 patent, and thus it cannot be liable for infringement.

## I. Undisputed Facts Regarding the '773 Patent

In or about the fall of 1992, Riceman approached Alexander Fischer ("Fischer") with a plan to license and enforce U.S. Patent No. 4,453,294 (the "'294 patent").[3] Riceman's proposal included purchasing the Randolph Rand Corporation ("Randolph Rand"), which was enforcing a similar patent, from Mitchell Medina ("Medina"). Riceman had variously been a consultant and employee of Randolph Rand since 1989, and under his consulting agreement any inventions he developed were the property of Randolph Rand. Fischer brought in Bauer as his partner, and on October 2, 1993 they purchased certain of Randolph Rand's assets, apparently not including the rights to any patents or inventions owned by Randolph Rand. The assets were assigned to a newly incorporated company named Randolph Rand Corporation of New York ("RRNY"), and Riceman was hired by the new company.

At some point during the summer of 1994, Riceman began working with David Novais, a patent lawyer at the firm of Oblan, Spivak, McClelland, Maier & Neustadt, P.C. ("Oblan, Spivak") to prepare the claims of the '773 patent application. During the preparation, Riceman wrote Novais a letter asking him to disregard a previous letter calling the patent's inventorship into question, and stating that Bauer was the inventor of the patent. The '773 patent application, with Bauer named as the inventor, was filed on February 15, 1995. On November 16, 2004, Riceman, Bauer, Fischer and RRNY, among others, entered into an agreement settling a lawsuit brought by Riceman

---

[3] The '294 patent covered a magnetic fastener without a central hole.

3

against RRNY and the Magnetic Snap Corporation. Under the agreement, Riceman released RRNY and the Magnetic Snap Corporation from all "claims of patent rights, including claims as inventor or co-inventor," and agreed not to "assist anyone else who is in litigation with" the other parties to the agreement. Declaration of Irving Bauer ("Bauer Dec."), Exhibit 4.

## II. Bauer's Evidence of Inventorship of the '773 Patent

### A. *Bauer's Testimony*

Bauer testified that he conceived of his new magnetic fastener by September 6, 1992, when he discussed the invention with Fischer and showed him a sketch of the device. Bauer declares that he constructed a working version in his machine shop within a month of that meeting and had prototypes made by A-C La Cava, a machine parts manufacturer, between August and October of 1993. In July 1994, Bauer declares that he sent a copy of the same sketch of his invention to a patent attorney at Oblan, Spivak. Bauer also declares that he asked Riceman to prepare drawings of his invention and to handle all communications with Oblan, Spivak, though in his deposition testimony he could not recall any person other than his attorney assisting him in the preparation of the '773 patent application form. During his deposition, Bauer was unable to explain the features of his invention except to state that it was "whatever it says in this patent." Declaration of Wendy Miller ("Miller Dec."), Exhibit 11 at 41.

### B. *Fischer's Testimony*

Fischer testified that Bauer told him he had invented a new magnetic fastener with a central hole that increased magnetic attraction at the September 6, 1992 meeting. Fischer also testified that Bauer made sketches of his invention at the meeting,

4

but did not recall anything else he and Bauer discussed. He similarly could not recall the details of any other meetings he participated in around that time or anything else about events during that general time period. Fischer also produced an appointment book with "G. Bauer" written on the September 6, 1992 page. The book includes a number of dates with "Bob Riceman" written on them, but Fischer could not recall what those references signified.

### C. La Cava's Testimony

AMC also presents a declaration from Alfonso La Cava ("La Cava") to corroborate Bauer's testimony, and submits an invoice supposedly from A-C La Cava, along with a check from Bauer to A-C La Cava dated December 17, 1993. At his deposition on December 21, 2006, however, La Cava testified that the declaration was prepared for him in advance, and that he had assumed it was accurate but could not himself remember the details it set forth, particularly the dates of events. La Cava also testified that Bauer gave him a check for drilling holes in a number of magnetic disks, but that he had certainly not prepared an invoice for Bauer relating to the work. He did believe it was possible that Bauer had prepared an invoice himself at the time. La Cava stated, on December 21, 2006, that this work was performed, "maybe ten, 13 years ago," and that it was not based on any design, drawing, or plan. Second Supplemental Declaration of Wendy Miller, Exhibit 28 at 12. AMC also presents a photocopy allegedly showing the prototypes made by A-C La Cava in October 1993, but it is impossible to determine whether they are similar, let alone identical, to the patented magnetic fastener.

*D. Additional Documentary Evidence*

AMC presents a number of other documents in support of Bauer's inventorship. As noted, it submits a copy of a sketch allegedly prepared by Bauer on September 6, 1992. The sketch has seven rough figures, some essentially illegible notations, and no legible date. AMC also submits a copy of a copy of the original sketch on which additional notations were made, most of them apparently restating, in clearer block letters, the original notations. It also includes a date, "9/6/92," which could conceivably reflect an illegible, and partly cut off, notation on the original. In addition, AMC provides a copy of a page dated May 4, 1994 allegedly containing Bauer's notes of further testing of his invention, a "recreated" August 25, 1994 invoice from Oblan, Spivak,[4] and a copy of an undated check to Oblan, Spivak.

**III. Riceman's Evidence of Inventorship of the '773 Patent**

*A. Riceman's Testimony*

Riceman testified that he conceived of the invention that became the '773 patent in 1992 while under contract with Randolph Rand, and was able to describe it at length during his deposition. In 1993, he presented his design to Medina, who rejected it at that time in favor of continuing his enforcement of an existing patent.[5] After the creation of RRNY, Riceman asserts that he was hired to run the new company during the initial transition, but did not sign an employment contract.

---

[4] After the submission of the invoice as part of AMC's evidence in support of its motion, Romag noted that it contained the '773 patent number, which had not been assigned at the time the invoice supposedly was issued. At oral argument, AMC represented that the invoice was an identical recreation of the contemporaneous invoice produced by Oblan, Spivak, whose records were automatically updated to include the patent number once it was assigned.

[5] Medina's Declaration in this action did not mention such a conversation.

6

Riceman testified that at some point between the October 1993 and the summer of 1994, Bauer and Fischer became concerned by reports that other magnetic fastener producers had designed around the '294 patent by including a central hole. Riceman informed them that he had conceived of such an invention in 1992, and they decided to move ahead with patenting the invention, with Riceman sending his drawings and claim descriptions to Novais. Riceman finally signed an employment agreement with RRNY on November 7, 1994.

According to Riceman, Bauer and Fischer insisted that Bauer would have to be named as the inventor to prevent Medina from acquiring the rights to the patent under Riceman's original contract with Randolph Rand. Riceman testified that he was told he would be fired if he did not agree to allow Bauer to claim credit for the invention, and that such threats were the reason he wrote to Novais disclaiming his inventorship. Riceman admitted that when approached by counsel for AMC in February 2006 regarding this action, he suggested that the patent be amended to include him as a co-inventor with Bauer in order to defeat the defense of incorrect inventorship. He stated that he made that offer because it was better than nothing, and not because Bauer was, in fact, his co-inventor. Riceman further admitted that he had been convicted of defrauding a business partner in 1978. Riceman also testified to a number of ways in which he felt unfairly treated by Fischer and Bauer in the creation of RRNY and the acquisition of rights to the '294 patent.

**B. Documentary Evidence**

Riceman provided a number of documents in support of his claim. His employment agreement with RRNY includes an attached design of four figures which

7

appear all but identical to figures 1-4 of the '773 patent. Riceman testified that he produced this design during the initial 1992-1993 invention period. Riceman also presents a set of designs from his laboratory notebook, with a notation that they were started in July 1993 and compiled from prior research and drawings. In addition, he produces a copy of the July 1993 designs with an additional set of new drawings, which he believes he made after leaving Randolph Rand. The drawings contained in these two documents are essentially identical to the figures included in the '773 patent. Riceman also produced a letter from Novais dated August 5, 1994 that discussed the draft claims for the '773 patent and included copies of Riceman's drawings.

## IV. The '126 Patent

On January 11, 1994, prior to the formation of Romag, Reiter conceived of a new magnetic fastener. He recorded the concept in his laboratory notebook and made a series of prototypes, first testing them on January 25, 1994. He refined the concept and, in January 1995, employed an engineering student, Michael Rader, to prepare engineering drawings of the invention. The drawings were prepared from January 11 to January 17, 1995.[6]

Reiter filed the '126 patent application on May 22, 1996. The PTO Examiner rejected certain of Reiter's claims as anticipated by the '773 patent, which was granted on November 12, 1996, and Reiter had the opportunity to engage in an interference proceeding under 25 U.S.C. § 102(g)(1) to contest the priority of invention. Instead, he surrendered his conflicting claims.

---

[6] While AMC does not concede that this chain of events occurred, it presents neither arguments for rejecting Romag's evidence nor any contradictory evidence of its own.

In contrast to the '773 patent, Reiter declares that the central hole in his invention decreased the magnetic attraction of the fastener. AMC presents the declaration of Dev Ratnum which states that tests of the current Romag product show that its central hole increases its attraction. AMC therefore disputes that Romag's current product is the same as Reiter's original invention.

## DISCUSSION

**I. Summary Judgment Standard**

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment should only be granted if "the nonmoving party 'has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof'." Berger v. United States, 87 F.3d 60, 64 (2d Cir. 1996) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). In ruling on a motion for summary judgment, the Court must "resolve all ambiguities and draw all factual inferences in favor of the nonmoving party." McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006) (citation omitted). Summary judgment should not be granted where issues of fact are "genuine," and "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**II. Plaintiff's Motion for Partial Summary Judgment**

AMC moves for summary judgment striking Romag's affirmative defenses and counterclaims based on (1) Bauer's lack of inventorship of the '773 patent;

9

(2) Bauer's unclean hands both in obtaining the '773 patent and conducting this litigation;[7] and (3) AMC's lack of standing to bring a claim based on the '773 patent. There are genuine issues of fact as to Bauer's inventorship and unclean hands, sufficient to defeat AMC's motion for summary judgment. AMC is, however, entitled to judgment as a matter of law dismissing Romag's affirmative defense based on lack of standing.

### A. Bauer's Lack of Inventorship

A patent must accurately name the inventor or inventors of a claimed invention. See 35 U.S.C. § 102(f); see also Schulze v. Green, 136 F.3d 786, 792 (Fed. Cir. 1998). If it does not, it is invalid, and such invalidity is a defense to an infringement action.[8] Pannu v. Iolab Corp., 155 F.3d 1344, 1348-49 (Fed. Cir. 1998). "An assertion of incorrect inventorship must be based on facts proved by clear and convincing, corroborated evidence." C.R. Bard, Inc. v. M3 Systems, Inc., 157 F.3d 1340, 1352 (Fed. Cir. 1998).

In evaluating a putative inventor's claim, the court applies a "rule of reason" test; "'all pertinent evidence' is examined in order to determine whether the 'inventor's story' is credible." Sandt Technology, Ltd. v. Resco Metal and Plastics Corp., 264 F.3d 1344, 1350 (Fed. Cir. 2001) (quoting Price v. Symsek, 988 F.2d 1187, 1195 (Fed. Cir. 1993)). Contemporaneous documentary or physical evidence is the most probative of invention, but circumstantial evidence standing alone can be sufficient to corroborate a claim of inventorship. Id. at 1350-51. "Post-invention oral testimony is

---

[7] The Court's Order of November 16, 2006 dismissed Romag's defenses and counterclaims based on unclean hands insofar as they relied on conduct unrelated to the '773 patent.

[8] If the patentee can demonstrate that an error in naming the inventor occurred "without any deceptive intention on his part," the patent will not be invalidated and the Court may order the patent corrected. 35 U.S.C. § 256. This remedy is not asserted by AMC as a basis for granting summary judgment, however, and the Court does not consider its application here.

more suspect, as there is more of a risk that the witness may have a litigation-inspired motive to corroborate the inventor's testimony, and that the testimony may be inaccurate." Id. at 1351.  Among the illustrative factors the Federal Circuit has applied in considering the corroborative force of a witness are:

> 1) the relationship between the corroborating witness and the inventor;
>
> 2) the time period between the event and trial;
>
> 3) the interest of the corroborating witness in the subject matter in suit;
>
> 4) contradiction or impeachment of the witness' testimony;
>
> 5) the extent and details of the corroborating testimony; and
>
> 6) the witness' familiarity with the subject matter of the patented invention.

See id.

Drawing all inferences in favor of Romag as the non-moving party, a reasonable fact-finder could find that Riceman's claim of inventorship is proved by clear and convincing, corroborated evidence.  Riceman presents apparently contemporaneous documentary evidence of invention that a fact-finder could reasonably find to be authentic.  Moreover, the inclusion of drawings essentially identical to the '773 patent application figures in Riceman's employment agreement with RRNY presents substantial circumstantial evidence of his inventorship.  AMC offers no plausible explanation for attaching drawings of Bauer's invention to Riceman's contract.  In light of these facts, Riceman's extensive and undisputed involvement in the preparation of the patent application also suggests that he, and not Bauer, was the source of the invention.

The plausibility of Riceman's assertions is enhanced by the paucity of contradictory evidence produced by Bauer.[9]  Riceman is able to discuss his purported invention at length, while Bauer appeared unable to provide even a bare bones explanation.  Riceman provides a laboratory notebook with extensive drawings that appear to have been directly incorporated into the patent application, while Bauer's best documentary evidence is a copy of a poorly drawn sketch that bears little resemblance to the patent figures.  The A-C La Cava and Oblan, Spivak evidence, even if genuine, is not inconsistent with Riceman's inventorship.  It is hardly surprising that Bauer would pay for prototypes and patent prosecution fees when he was to be the named inventor and chief beneficiary of the patent.

As to Fischer's testimony, the Federal Circuit's factors accord it little weight.  Fischer is a longtime business partner of Bauer.  Almost 15 years have passed since the alleged September 6, 1992 meeting, and Fischer was incapable of remembering anything about the events surrounding the meeting, or even details of the meeting itself.  It is strange that Fischer recalled only Bauer's alleged revelation of his new invention, but nothing else.  Moreover, Fischer is directly implicated in the fraud on the PTO alleged by Riceman, and therefore has an obvious interest in supporting Bauer's claim.

In light of the many genuine issues of material fact and the competing credibility determinations required to resolve them, summary judgment dismissing Romag's inventorship defense is inappropriate.

### B. Unclean Hands

The unclean hands doctrine is based on the maxim that "he who comes

---

[9] While AMC points to various reasons to conclude that Riceman lacks credibility as a witness, credibility is a generally a question for the fact-finder.  None of the points raised by AMC is so persuasive that a reasonable fact-finder would be obligated to disbelieve Riceman's testimony.

12

into equity must come with clean hands." Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 241 (1933). The doctrine holds that a court's equitable powers "can never be exerted in behalf of one who has acted fraudulently, or who by deceit or any unfair means has gained an advantage." Id. at 245. "Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim." Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 815 (1945). Moreover, a patent infringement action implicates "the public interest as well as the private interests of the litigants" and so the doctrine "assumes even wider and more significant proportions" in such cases. Id.

   In Keystone Driller, the plaintiff brought a patent infringement claim relying on a prior judgment of patent validity and infringement that had been obtained through the plaintiff's suppression of evidence of invalidity. 290 U.S at 242-43. The court found that plaintiff's unclean hands barred his claim. Id. at 247. Similarly, in Precision Instrument, the doctrine was found to bar a patent infringement claim where the plaintiff had known of and concealed perjury committed before the Patent Office in the prosecution of the patents allegedly infringed. 324 U.S at 816.

   Romag argues that Bauer, Fischer, and RRNY conspired to fraudulently represent that Bauer was the inventor of the '773 patent in order to prevent Medina from asserting his rights to the patent. Romag further argues that this fraud was continued when Bauer and RRNY suppressed evidence of the fraud through the provisions of their settlement with Riceman that barred him from claiming inventorship of the patent or providing any party sued for infringement by Romag with evidence of his inventorship

for use in their defense. As noted, there is sufficient evidence for a fact-finder to conclude that Riceman was indeed the inventor of the '773 patent, and it appears undisputed that if Riceman had been the inventor, Medina would have had a claim on the invention. That evidence alone is sufficient to raise genuine issues of fact as to whether Romag's contentions of AMC's fraud are correct. If proven, those contentions amount to a scheme by Bauer, the sole employee and owner of AMC, to defraud the PTO and Medina and to conceal the evidence of that fraud while bringing this infringement action, placing this case within the ambit of Keystone Driller and Precision Instruments.[10] Summary judgment as to the defense of unclean hands must therefore be denied.

### C. Lack of Standing

"If a party lacks title to a patent, that party 'has no standing to bring an infringement action' under that patent." Lans v. Digital Equip. Corp., 252 F.3d 1320, 1328 (Fed. Cir. 2001) (quoting FilmTec Corp. v. Allied-Signal, Inc., 939 F.2d 1568, 1571 (Fed. Cir. 1991). When the plaintiff is the patentee, however, "it is no defense that the [plaintiff] obtained or retains title in breach of a contractual or other obligation to another (such as a contractual obligation to assign the patent to an employer or former employer)" and "[s]uch 'equitable' interests do not defeat standing to sue for infringement." 8 Donald S. Chisum, Chisum on Patents § 21.03; see also Mercantile Nat'l Bank v. Howmet Corp., 524 F.2d 1031, 1034 (7th Cir. 1975) (collecting cases and noting that "[i]t has long been settled that a third party's equitable rights in a patent may not be asserted as a defense in an action for infringement brought by the owner of title to the patent."). As it is undisputed that AMC is the patentee, Romag may not assert the rights of third parties to

---

[10] Romag also argues that La Cava's testimony raises the possibility that Bauer and/or AMC has fabricated evidence of Bauer's inventorship for use in this litigation. That allegation, if believed by a fact-finder, would certainly provide additional support to an unclean hands defense.

14

the '773 patent as a defense to AMC's infringement claim. Romag's affirmative defense of lack of standing, based on the putative rights to the patent of Riceman or Medina, must therefore be dismissed.

### III. Defendant's Motion for Summary Judgment

"[I]f a patentee's invention has been made by another, prior inventor who has not abandoned, suppressed, or concealed the invention, § 102(g) will invalidate that patent." Apotex USA, Inc. v. Merck & Co., 254 F.3d 1031, 1035 (Fed. Cir. 2001). Prior invention is therefore a defense to a patent infringement action. To invoke it, the party asserting the defense must first demonstrate prior invention by clear and convincing evidence. Dow Chemical Co. v. Astro-Valcour, Inc., 267 F.3d 1334, 1339 (Fed. Cir. 2001).

"[P]riority of invention goes to the first party to reduce an invention to practice unless the other party can show that it was the first to conceive of the invention and that it exercised reasonable diligence in later reducing that invention to practice." Cooper v. Goldfarb, 154 F.3d 1321, 1327 (Fed. Cir. 1998). Conception is defined as "the formation, in the mind of the inventor, of a definite and permanent idea of the complete and operative invention," id., which must include every feature or limitation of the invention as recited in the patent claim. Kridl v. McCormick, 105 F.3d 1446, 1449 (Fed. Cir. 1997). Reduction to practice can be either constructive, occurring when a patent application is filed, or actual, requiring the inventor to prove that (1) he constructed "an embodiment" that had all the features of the patented invention, and (2) "he determined that the invention would work for its intended purpose." Cooper, 154 F.3d at 1327.

Here, Romag has produced clear and convincing evidence, uncontradicted by AMC, that Reiter reduced a magnetic fastener invention to practice by January 25, 1994. Romag has not, however, produced clear and convincing evidence that the embodiment had all the features of the '773 patent. Romag's evidence demonstrates that the Reiter invention included a central hole which reduced the magnetic attraction of the fastener, while the '773 patent covers a fastener whose central hole increases its magnetic attraction. Moreover, AMC has produced evidence, contested by Romag, that the Romag product at issue includes a central hole which increases its attraction, thereby infringing on the '773 patent.

Romag contends that it is entitled to prevail regardless of which theory the fact-finder accepts. If Romag is correct and the central hole decreases magnetic attraction, then its product does not infringe the '773 patent. If AMC is correct and the central hole increases magnetic attraction, then Reiter's invention has all the features of the '773 patent and therefore anticipated it. While the contention is appealing, it turns on a factual question: whether Romag's current product and Reiter's original invention are identical. The Court cannot simply discount the possibility that Romag adopted the '773 design, with its increased magnetic attraction, for use in its commercial product while claiming to sell a product covered by the '126 patent. Without proof that Romag's product is the same as Reiter's claimed 1994 invention, Romag has not presented clear and convincing evidence that Reiter's invention incorporated all the claimed features of the '773 patent, nor shown that there are no genuine issue of material fact as to whether Romag's product infringes the '773 patent. Accordingly, Romag's motion for summary judgment must be denied.

## CONCLUSION

AMC's motion for summary judgment is GRANTED as to Romag's tenth affirmative defense (lack of standing), and DENIED as to Romag's fifth affirmative defense (lack of inventorship) and as to Romag's eighth affirmative defense (unclean hands) and first counterclaim, except insofar as they were dismissed by the Court's order of November 16, 2006. Defendant's motion for summary judgment is DENIED. The Clerk of the Court is directed to close out these motions.

The parties should meet and confer on what further steps are necessary to bring this matter on for trial. The parties should also comply with the Court's Individual Practices with regard to preparation of a pretrial order, lists of exhibits and witnesses, and like matters. The Court has scheduled a conference for Tuesday, June 19, 2007 at 3:45 p.m. to discuss a trial date.

Dated: New York, New York
May 29, 2007

SO ORDERED

PAUL A. CROTTY
United States District Judge